## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HAROLD R. BERK | ; | |
| 1041 Glendevon Drive | : | |
| Ambler, PA 19002-1855          and | : | |
| | : | |
| ORION PARTNERS V, LLC, | : | |
| a Delaware limited liability company          : | | |
| 1041 Glendevon Drive | : | |
| Ambler, PA 19002-1855 | : | |
| | : | |
| Plaintiffs | : | CIVIL ACTION |
| v. | : | NO. 15-0474 |
| | : | |
| THOMAS A. CLARE | : | |
| 902 Prince Street | : | |
| Alexandria, Virginia 22314 | : | |
| | : | |
| CLARE LOCKE LLP, | : | |
| 902 Prince Street | : | |
| Alexandria, Virginia 22314 | : | |
| | : | |
| ALISON WADLE | : | |
| 1225 17TH Street, Suite 1400 | : | |
| Denver, Colorado 80202 | : | |
| | : | |
| HCP PACIFIC ASSET MANAGEMENT, LLC, a | : | |
| Delaware limited liability company | : | |
| 1225 17th Street, Suite 1400 | : | |
| Denver, Colorado  80202 | : | |
| | : | |
| HUNT COMPANIES, INC., a | : | |
| Delaware corporation | : | |
| 1225 17TH Street, Suite 1400 | : | |
| Denver, Colorado 80202 | : | |
| | : | |
| STEVEN F. GRIFFITH, JR. | : | |
| 201 St. Charles Avenue, Suite 3600 | : | |
| New Orleans, Louisiana 70170 | : | |
| | : | |
| BAKER, DONELSON, BEARMAN, | : | |
|  CALDWELL & BERKOWITZ, P.C., a | : | |
| Tennessee professional corporation | : | |
| 201 St. Charles Avenue, Suite 3600 | : | |
| New Orleans, Louisiana 70170          and | : | |

HUNT CAPITAL PARTNERS, LLC, a          :
Delaware limited liability company      :
1225 17th Street, Suite 1400            :
Denver, Colorado 80202                  :
                                        :
          Defendants.          :

## <u>AMENDED CIVIL COMPLAINT</u>

Plaintiffs Harold R. Berk and Orion Partners V, LLC, by their undersigned counsel,

herewith state their Amended Civil Complaint against the defendants Thomas A. Clare; Clare

Locke LLP, Alison Wadle; HCP Pacific Asset Management, LLC; Hunt Companies, Inc.; Steven

F. Griffith, Jr.; Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C. and Hunt Capital

Partners, LLC, after removal of this action by the defendants from the Court of Common Pleas of

Montgomery County, Pennsylvania, as follows:

### PARTIES

1.   Plaintiff Harold R. Berk is an adult individual who is a citizen and resident of

Pennsylvania who resides and works at 1041 Glendevon Drive, Ambler, Pennsylvania 19002.

Plaintiff Berk is an attorney licensed to practice law in Pennsylvania.

2.   Plaintiff Orion Partners V, LLC ("Orion") is a Delaware limited liability company with

an office at 1041 Glendevon Drive, Ambler, Pennsylvania 19002.  Plaintiff Berk is the sole

member of Orion.

3.   Defendant Thomas A .Clare is an adult individual and attorney with offices at 902 Prince

Street, Alexandria, Virginia  22314.  Defendant Clare regularly practices law in the

Commonwealth of Pennsylvania including representing the former President of Penn State

University against the former head of the FBI, Louis Freeh, in litigation currently pending in

Pennsylvania.

4.   Defendant Clare Locke LLP purports to be a Virginia limited liability partnership with offices at 902 Prince Street, Alexandria, Virginia 22314.   Defendant Clare Locke LLP regularly practices law in the Commonwealth of Pennsylvania including representing the former President of Penn State University against the former head of the FBI, Louis Freeh, in litigation pending in Pennsylvania.

5.   Defendant Alison Wadle is an adult individual and attorney with offices at 1225 17TH Street, Suite 1400, Denver, Colorado 80202.  She is employed as an attorney by defendants Hunt Companies, Inc.; HCP Pacific Asset Management, LLC; and Hunt Capital Partners, LLC , and she regularly handles legal business for those defendants concerning their substantial business affairs in Pennsylvania.

6.   Defendant HCP Pacific Asset Management, LLC ("HCP") is a Delaware limited liability company with offices at 1225 17th Street, Suite 1400, Denver, Colorado 80202.  HCP handles asset management issues for defendants Hunt Companies, Inc. and Hunt Capital Partners, LLC concerning partnerships and other business organizations in which they have an interest in Pennsylvania.  HCP engages in substantial business in Pennsylvania.

7.   Defendant Hunt Companies, Inc. ("Hunt") is a Delaware corporation with offices at 1225 17th Street, Suite 1400, Denver Colorado 80202 and at many other locations around the world. Defendant Hunt purchased in 2011-2012 the "Tax Credit Business" of Capmark through proceedings in Bankruptcy Court in Delaware which Capmark Tax Credit Business was located at 116 Welsh Road, Horsham, Pennsylvania 19044.  Though defendant Hunt acquired this business in Horsham, Pennsylvania for a sum in excess of One Hundred Ten Million Dollars there is no record with the Pennsylvania Secretary of State that defendant Hunt ever filed, sought or obtained an authorization to do business in Pennsylvania as a foreign corporation.

- 3 -

8.   Defendant Steven F. Griffith, Jr. ("Griffith") is an adult individual and an attorney who is a shareholder in defendant Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C. and who has an office at 201 St. Charles Avenue, Suite 3600, New Orleans, Louisiana 70170. Defendant Griffith is the lead attorney for plaintiffs in litigation pending in the federal court in New Orleans, Louisiana concerning the removal of the General Partners as general partners of five Louisiana limited partnerships that developed and operated low-income housing tax credit assisted housing in Louisiana (the "General Partners").  Plaintiff Berk represented the General Partners from November 3, 2014 to November 30, 2014 and thereafter William Aaron served as local counsel for the General Partners in the New Orleans litigation. Defendant Griffith has regularly corresponded with Plaintiff Berk in connection with the General Partners.  Defendant Griffith's law firm, Baker Donelson, regularly represents clients in Pennsylvania and in particular in the Eastern District of Pennsylvania.

9.    Defendant Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C. is a Tennessee professional corporation with offices at 201 St. Charles Avenue, Suite 3600, New Orleans, Louisiana 70170, in Washington, D.C. and at many other locations. ("Baker Donelson").  Baker Donelson regularly practices law in Pennsylvania and in particular participates as counsel in numerous cases in the United States District Court for the Eastern District of Pennsylvania.

10. Defendant Hunt Capital Partners, LLC is a Delaware limited liability company with offices at 1225 17th Street, Suite 1400, Denver, Colorado 80202 ("Hunt Capital").   Hunt Capital is an affiliate of Hunt and is engaged on its own behalf and on behalf of Hunt in various and substantial business entities located in Pennsylvania.

**JURISDICTION AND VENUE**

- 4 -

11. This Court has jurisdiction over this action and over each of the defendants under 28 U.S.C. §1332 based on diversity of citizenship and the amount in controversy exceeds the sum of Seventy-Five Thousand Dollars exclusive of interest and costs.

12. Venue lies within this District under 28 U.S.C. §1391(b)(2) and (3) as a substantial portion of the events giving rise to the claim occurred in this District, and the defendants are subject to the personal jurisdiction of this Court as they have and do engage in substantial business in this District and in Pennsylvania.

### FACTUAL ALLEGATIONS

13. On July 1, 2014 defendants Griffith and Baker Donelson sent notices to the General Partners advising them that they represented defendant HCP, and that it was authorized by the respective limited partners in each of five Louisianan limited partnerships, for a number of alleged reasons, and they intended to remove the General Partners as the general partners of each of the five Louisiana limited partnerships.

14. For reference, the General Partners are  Warren Homes, LLC, Victor S. Loraso, Jr., Rene C. Crescione, Sr., Canary Homes, LLC, Hnasko Holding Company, Inc., Robin Homes, LLC, and Smith Square, LLC, where each of the LLCs are Louisiana limited liability companies (collectively, the "General Partners").  For reference, the five  Louisiana limited partnerships are: Ames Gardens Estates Limited Partnership; Canary Homes, L.P.; Hnasko Affordable Homes, ALPIC; Robin Homes, L.P;  and Smith Square Development Limited Partnership (collectively, the "Partnerships.")

15. On November 3, 2014 plaintiff Berk was retained by the General Partners in the five Partnerships to negotiate with defendant HCP and its attorneys at Baker Donelson regarding the terms of a mutual separation and assignment of partnership interests.  The matter had been

- 5 -

referred to plaintiff Berk by former counsel to the General Partners who had changed law firms and as a result had a conflict prohibiting her continued representation.

16. On November 3, 2014, plaintiff Berk sent a letter by email to defendant Griffith advising of his retention as counsel for the General Partners, rejecting his counteroffer of October 30, 2014 and revoking the General Partners original offer of September 24, 2014.  Plaintiff Berk advised defendant Griffith that he did not currently have relevant documents concerning the matter and would have to review them before negotiating further.

17.   After travelling to a hearing in Little Rock, Arkansas and completing a closing on permanent financing of multifamily real property in Tulsa, Oklahoma, plaintiff Berk had a telephone call on November 7, 2014 with Erin Pelleteri, another attorney at Baker Donelson, and advised her of his completed travel and the fact that he still did not have relevant documents.

18. On Sunday, November 9, 2014, defendant Griffith contacted plaintiff Berk by email to negotiate terms of settlement concerning the July 1, 2014 notices of intent by defendant HCP to remove the General Partners as general partners of the Partnerships.

19. Plaintiff Berk advised defendant Griffith that he had still not received relevant documents and could not further negotiate until after he had an opportunity to review them.  At that time Plaintiff Berk did not even have the partnership agreements for the five Partnerships though he had requested them from his clients. Plaintiff Berk requested that defendant Griffith provide him with documents providing authority for his client defendant HCP, identified as an asset manager, to remove the General Partners as Plaintiff Berk advised that was not a typical right of an asset manager and in fact would be rather extraordinary.

20.   On that same day, Sunday, November 9, 2014, defendant Griffith advised plaintiff Berk by email that he had to submit a counteroffer to defendant Griffith that day, Sunday, November

9, 2014 or he would remove the General Partners as general partners of their respective Partnerships. After objection by plaintiff Berk that he did not have relevant documents and could not negotiate yet, defendant Griffith then said by email, again on November 9, 2014, that plaintiff Berk had to submit a counteroffer by Monday, November 10, 2014, or defendant Griffith would have defendant HCP remove the General Partners as general partners of each of the five respective Partnerships.  See Exhibit A attached hereto and incorporated herein by reference.

21. From a prior representation, plaintiff Berk did have a copy of the Agreement of Sale and Bankruptcy Court orders whereby defendant Hunt acquired in 2011 and 2012 the tax credit business of Capmark which was located at 130 Welsh Road, Horsham, Pennsylvania 19004. Capmark had been the manager of the Ohio limited liability companies that were the investment limited partners in each of the five Partnerships and an affiliate of Capmark was the Special Limited Partner in each Partnership.

22. Plaintiff Berk inquired of defendants Griffith and Wadle if Hunt or one of its affiliates had been substituted as a member of the five limited partners in each of the five Partnerships at issue.  Defendant Wadle replied that they were not but that a Hunt affiliate was the non-member manager of the limited partner entities. She claimed this unidentified non-member manager had full power and authority to act for each of the five investor limited partners of the Partnerships though it was not a member of any of them.

23. Plaintiff Berk on November 9, 2014 requested that defendant Griffith provide him with copies of the documents that gave authority for HCP to act for the limited partners and remove the General Partners as general partners as Griffith threatened to do.

24. Plaintiff Berk was flabergasted at the unprofessional conduct of defendant Griffith on November 9, 2014 in recognizing that Berk did not have basic partnership documents for review but nevertheless demanding an immediate counter offer.  Griffith had offered on October 30, 2014 to allow the General Partners to purchase one of the five partnerships for $750,000, but requiring them to assign to HCP the four other partnerships for no consideration.  Now on November 9, 2014 he demanded if that price were not paid or a suitable counteroffer made immediately he would initiate steps to remove the General Partners as general partners.  Though Griffiths' original notices of intent were dated July 1, 2014, he gave no reason or explanation for his need for an immediate counteroffer on November 9, 2014.

25. On November 13, 2014, plaintiff Berk posted a comment on the website Listserve of the American Bar Association on Affordable Housing and Community Development Law (the ABA Forum Website") detailing the problems he was encountering with various syndicators and their relationships with general partners and noting some of the facts of the matter involving the five General Partners but without revealing the name, geographic location of the property or any other identifying information about the syndicator involved.  He did so to raise with ABA Forum members the various legal issues that arose in these situations and he sought ideas from ABA Forum members on any claims his client might have against the syndicator and other action that could be taken.  See Exhibit B attached hereto and incorporated herein by reference.

26. On November 18, 2014, defendant Griffith sent out notices, now on behalf of the five Ohio limited liability companies that were the limited partners in the five Partnerships, and not on behalf of HCP, removing the General Partners as general partners of each of the five Partnerships.

27. On November 20, 2014, defendant Griffith and Baker Donelson filed litigation against the General Partners in the United States District Court for the Eastern District of Louisiana in a case entitled *AMTAX Holdings 2001 VV, LLC et al vs. Warren Homes, LLC et al*, Civil Action No  2:14 cv 02652 in which they sought to obtain judicial relief supporting their removal of the General Partners and for damages.

28. On November 21, 2014, United States District Judge Engelhardt, to whom the case was assigned, convened a telephonic conference hearing on a motion for Temporary Restraining Order filed by Griffith and Baker Donelson, and plaintiff Berk participated as counsel for the defendant General Partners from a hotel room in Chicago.  Plaintiff Berk detailed for Judge Engelhardt the discussions that had occurred among counsel and how the plaintiffs had failed and refused to provide any of the documents giving them authority to take the specified removal actions.  Griffith did not deny that he refused to provide the documents, and Judge Engelhardt ordered that the authority documents be provided to the General Partners.

29. Despite Judge Englehardt's oral order during the TRO conference, defendants Griffith, Baker Donelson, Hunt, Hunt Capital and Wadle continued to refuse to provide these authority documents to the General Partners.

30. After the TRO Conference plaintiff Berk turned over litigation representation of the General Partners in the Louisiana federal litigation to New Orleans attorney, William Aaron.

31. On November 24, 2014, defendants Clare and Clare Locke, LLP sent a letter via email to plaintiff Berk claiming that his posting on the ABA Forum about the "Vulture Syndicator" constituted defamation of HCP even though HCP was not named in the posting, the geographic location of the properties at issue was not included in the posting, the states where the partnerships were organized and had property was not referenced and virtually no information

was contained that could allow anyone to identify who or what was the Vulture Syndicator. See Exhibit C attached hereto and incorporated herein by reference.  (the "Clare Letter").

32. Defendant Clare and Clare Locke, LLP on instructions of Wadle, Griffith, Baker Donelson, Hunt, HCP and Hunt Capital sent copies of the Clare Letter to each of the General Partners.

33. Defendant Clare stated in the letter that unless Berk retracted his ABA posting, all of the General Partners would be sued together with Berk.  Defendant Clare published and distributed the Clare Letter to each of the General Partners that Berk represented.

34. On information and belief, defendant Clare and the other defendants circulated and published the Clare Letter or the contents of the Clare Letter to accountants, attorneys and others involved in the low-income housing tax credit industry.

35. Further, the ABA Forum Website posting referred in the beginning how plaintiff Berk was involved in matters involving a number of general partners and syndicators where legal issues arose between them. The ABA Forum Website postings related to conduct by the four syndicators and numerous general partners whom plaintiff Berk represented in negotiations and litigation with the four syndicators.

36. With respect to the conduct of defendants Hunt, Hunt Capital, Wadle, Griffith and Baker Donelson, defendant HCP was identified by defendant Griffith as an Asset Manager for each of the five investor limited partners in the Partnerships in his July 1, 2014 notices of intent to remove the General Partners.  Typically an asset manager on behalf of an investor is involved with reviewing the physical conditions of the property, examining financial records, reviewing audits, reviewing tax returns for the partnerships and related matters.  Typically asset managers are not involved in and have no authority to remove general partners of limited partnerships.

37. Typically investor members of investment limited liability companies do not give carte blanche authority to asset managers to remove general partners and to sue general partners without a vote or resolution of the members of the investment limited partner.

38.  Wadle instructed Griffith on the content of the responses to be provided to Berk and other counsel for the General Partners, and she determined and instructed Griffith to withhold the basic authority documents, which defined the authority of defendant HCP, from the General Partners and their counsel. Wadle did so on behalf of and as the agent and attorney for defendants HCP, Hunt and Hunt Capital Partners.

39. When Griffith and Baker Donelson filed the litigation against the General Partners on November 20, 2014, they recognized and admitted that HCP did not have authority to remove the General Partners as they brought the litigation in the name of the five Ohio limited liability companies that are the investment limited partners in each for the five Louisiana limited partnerships, whose names are: AMTAX Holdings 2001-VV, LLC; AMTAX Holdings 248, LLC; AMTAX Holdings 2001-UU, LLC; AMTAX Holdings 249, LLC; and AMTAX Holdings 250, LLC, each of which is an Ohio limited liability company (collectively, the "Ohio LLCs")

40. Since the filing of the litigation and the Notices of Removal of November 18, 2014 done in the name of the Ohio LLCs, and not HCP, counsel for the General Partners have sought copies of any votes or resolutions adopted by the actual members of each of the Ohio LLCs, but Griffith, Baker Donelson, Hunt and Hunt Capital have refused to provide  copies of any votes or resolutions  of the members of the investment limited partners which authorized removal of the General Partners and authorized filing of litigation in federal court against the General Partners. As of the date of this Amended Civil Complaint, that is February10, 2015, the defendants have

still not provided any consents or resolutions of the actual investor members to the removal of the General Partners and the filing of litigation against them.

41. On November 15, 17 and 19, 2014, plaintiff Berk sent documents and letters to Kenneth Polite, Esquire, the United States Attorney for the Eastern District of Louisiana concerning the removal of the General Partners and in particular the demand from Griffith on October 30, 2014 that the General Partners pay HCP $750,000 and surrender four other limited partnerships without any compensation in exchange for retaining a general partnership interest in the Ames partnership, and then on November 9, 2014 demanding an immediate counteroffer from Berk on the threat that if an acceptable offer was not provided the General Partners would all be removed as general partners.  Berk noted to United States Attorney Polite that Griffith and HCP refused to provide any authority by which they claimed a right to remove the General Partners despite their demand for substantial monetary payments on the threat of removal.

42. On December 3, 2014 Assistant United States Attorney Brian Kleba wrote to Plaintff Berk advising that the United States Attorney was referring the matter to the New Orleans Office of the Federal Bureau of Investigation for investigation and for the FBI to make a recommendation to the U.S. Attorney concerning prosecution. The matter was referred to the FBI White Collar Squad in New Orleans.

43. On December 4, 2014, plaintiff Berk represented a subject witness in federal Grand Jury proceedings in Miami, Florida concerning construction of multifamily property in Florida.  Prior to the proceedings, plaintiff Berk met with the U.S Attorney handling the Miami investigation and detailed for him the facts of the matter involving the General Partners and the five Partnerships. After detailing the facts and responding to his questions, the head of the Economic

Crimes Unit stated that the facts of the demand for payment on threat of removal, with no showing of authority to remove, constituted a case of "classic fraud".

44.   On December 2, 2014, HCP and Hunt Capital filed litigation against Berk in federal court in New Orleans claiming defamation of both HCP and Hunt Capital. ("Hunt v Berk litigation").   They also sued Harold R. Berk, P.C. even though that professional corporation has not been operational for several years, has had nothing to do with the matter at hand, has not written any letters or sent any emails and has no involvement whatsoever.in the matter involving HCP and the General Partners.

45.   Berk has filed a Motion to Dismiss the *Hunt v. Berk* litigation for lack of personal jurisdiction over him (and the inoperative P.C.) in Louisiana.  He has also filed a Motion to change the venue of that action to this District pursuant to 28 U.S.C. §1404(a).

46. During the course of discussions between defendant Griffith and William Aaron who took over the federal litigation in New Orleans for the General Partners, Griffith has stated on multiple occasions that Berk is in competition with defendant Hunt in the tax credit business.

47. Plaintiff Berk does represent individuals and businesses in various types of tax credit transactions, and he has acted as a principal in some tax credit transactions through one of his entities known as Orion Partners.  Berk recently formed Orion Partners V, LLC as a Delaware limited liability company, as were the four predecessor Orion Partners entities, in order to pursue current tax credit opportunities in Pennsylvania, Virginia, Florida and elsewhere.

48. In the course of that work Berk through the various Orion Partners entities has secured investors to participate in various types of tax credit transactions at various geographic locations.

49. On information and belief, the Operating Agreements of each of the Oho LLCs which are the investment limited partners in the five Partnerships, do not allow the affiliate of defendant

Hunt, which is the non-member manager of each of the Ohio LLCs, to remove general partners from the lower tier operating limited partnerships without the consent of the members of each of those five Ohio LLCs.

50. On information and belief, the members of the Ohio LLCs have not given effective consent to their non-member manager, Tax Credit Holdings III, LLC, a Delaware limited liability company and an affiliate of and controlled by defendants Hunt and Hunt Capital, to remove the General Partners at the time that defendant Griffith sent the November 18, 2014 notices of removal of the General Partners.

51.  On information and belief, the Members of the five Ohio LLCs have not given effective consent to the removal of the General Partners.

52. On information and belief, the Operating Agreements of the five Ohio LLCs do not allow the non-member Manager of them, Tax Credit Holdings Fund, LLC, to file litigation against the General Partners without the consent of the Members of each Ohio LLC.

53. On information and belief, the Members of the Ohio LLCs have not given effective consent to file the litigation against the General Partners which has been filed by the five Ohio LLCs.

54. On information and belief, the Asset Management Agreements between HCP and the five Ohio LLCs do not permit HCP to remove the General Partners without the consent of the five Ohio LLCs.

55. On information and belief, the five Ohio LLCs had not given effective consent to defendant HCP to remove the General Partners as of the date of defendant Griffith's July 1, 2014 letters of intent to remove the General Partners from the five Partnerships.

56. On information and belief, the Members of the Ohio LLCs had not given consent to defendant HCP or to the five Ohio LLCs to remove the General Partners as of the date of defendant Griffith's July 1, 2014 letters of intent to remove the General Partners.

57. Defendant HCP did not have effective consent or authority to the removal of the General Partners at the time that defendant Griffith sent the July 1, 2014 notices of intent to remove the General Partners.

58. The statements made by plaintiff Berk in the ABA Forum Website postings were true and correct.

FIRST CAUSE OF ACTION- DEFAMATION

59. Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through 58 above.

60. The letter from defendants Clare and Clare Locke, LLP, which was directed and commanded to be sent by defendants HCP, Hunt, Hunt Capital, Wadle, Griffith and Baker Donelson is of and concerning plaintiff Berk and accuses him of malicious and intentional defamation of HCP and Hunt Capital principally arising from his posting on the ABA Forum Website even though it does not mention or refer to Hunt or HCP or Hunt Capital and does not identify the geographic location of the real properties or the partnerships involved. The Clare Letter was sent to each of Berk's General Partner clients.

61. The allegations by defendant Clare in the Clare Letter that plaintiff Berk maliciously and intentionally defamed defendants Hunt and Hunt Capital are false.

62. The Clare Letter threatened to sue not only Berk but also all of his General Partner clients unless Berk published a complete retraction of his statements regarding the problem between some of his general partner clients and the syndicator investors.

- 15 -

63. The Clare Letter apparently sought to have Berk publicly state that defendants Hunt, HCP or Hunt Capital was the "Vulture Syndicator" referred to in the ABA Forum Website posting and then to disavow and retract the postings as to them.

64. Plaintiff Berk could not do so as the ABA Forum Website postings were and are true and correct.

65. Assuming that the ABA Forum Website postings could be construed to relate to or concern defendants Hunt, Hunt Capital and HCP even though they are not referred to by name or geographic location, nevertheless all of the statements in the ABA Website posting were and are true and correct.

66. Defendants HCP, Hunt and Hunt Capital have not given any reasons for their refusal to produce the Asset Management Agreements of HCP with the five Ohio LLCs, and the only reason they have failed to produce them is that they will show that HCP did not have authority to remove the General Partners as defendant Griffith threatened to do unless $750,000 were paid to HCP and four other limited partnerships were assigned to HCP without compensation.

67.  The allegations in the Clare Letter are defamatory, malicious, libelous, unfounded and untruthful.

68. Each of defendants HCP, Hunt, Hunt Capital, Wadle, Griffith and Baker Donelson knew that the allegations in the Clare Letter of and concerning Berk were false, malicious, defamatory, libelous and intentionally untruthful as each of them knew at the time that defendant HCP did not have authority to remove the General Partners at the time defendant Griffith sent the July 1, 2014 notice of intent to remove letters and at the time he sent the counteroffer letter of October 30, 2014.  But each of these defendants directed defendant Clare to publish and issue the Clare Letter.

69. Plaintiff Berk sent letters to each of the defendants or their counsel on November 28 and December 2, 2014 demanding that they retract the malicious and intentional defamation of plaintiff Berk, but they have failed to do so.

70. On information and belief the defendants have provided copies of the Clare Letter to persons other than the General Partners and have done so to defame, libel and injure plaintiff Berk in his legal practice and other business interests.

71. Plaintiff Berk has been forced to spend time and money to defend himself from the defamation of defendants, and defendants have sought to injure his reputation as a lawyer by their defamatory statements of and concerning plaintiff Berk and to cause him to lose legal business.

72. Plaintiff Berk was invited to publish an article in the Novogradac Journal of Tax Credits (the "Journal") concerning procedures to obtain Private Letter Rulings from the Internal Revenue Service to correct various errors in low-income housing tax credit forms and submissions, but defendants have pressured Michael Novogradac and the Editors of the Journal not to publish Berk's article.

73. By not being able to publish the article, plaintiff Berk will be deprived of future legal business and revenue which would result if the article was published in the Journal as he was invited to do by Mr. Novogradac and the Editors of the Journal.

74. Defendants have told officers and employees of the American Bar Association that they should not allow Berk to publish any articles or comments on the ABA Forum Website, and as a result of defendants' actions, Berk has been denied the opportunity to publish articles on the ABA Forum Website.

75. Being deprived of the opportunity to publish articles on the ABA Forum Website will result in Berk losing future legal business and revenue as he has in the past obtained substantial legal business as a result of his postings on the ABA Forum Website.

76. The publication of the defamatory Clare Letter and the republication of it and its contents by the defendants has and will result in the loss of substantial legal business and revenue otherwise accruing to plaintiff Berk.

WHEREFORE, Plaintiff Berk prays that judgment be entered in his favor against all defendants for compensatory and punitive damages in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00), exclusive of interest and costs, but plus interest and costs and other appropriate relief.

SECOND CAUSE OF ACTION – INTENTIONAL INTERFERENCE WITH ATTORNEY CLIENT RELATIONSHIP AND CONTRACTUAL RELATIONS

77. Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through 76 above.

78. Defendants sent and had the Clare Letter sent to each of Berk's General Partner clients in order to intentionally interfere, without any authority, with the attorney client relationship between Berk and the General Partner clients.

79. Defendants sent and had the Clare Letter sent to each of the General Partner clients of Berk threatening to sue them for the statements defendants attributed to Berk, and they did so to intentionally interfere with the attorney client relationship between Berk and the General Partner clients.

80. Defendants have caused Berk to lose legal fees resulting from their threats to sue the General Partner clients of Berk.

81. As a result of the publication and republication of the false and defamatory Clare Letter and its contents, William Aaron decided that it would be best for the General Partners if plaintiff Berk did not seek admission pro hac vice in the New Orleans litigation against the General Partners, and as a result plaintiff Berk has and will lose substantial legal fees which would otherwise result from his participation pro hac vice in that litigation in New Orleans.

WHEREFORE, Plaintiff Berk prays that judgment be entered in his favor against all defendants for compensatory and punitive damages in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00) exclusive of interest and costs but plus interest and costs and other appropriate relief.

THIRD CAUSE OF ACTION- INTENTIONAL INTERFERENCE WITH PROSPECTIVE BUSINESS OF ORION PARTNERS V, LLC

82. Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through 81 as set forth above.

83. Defendant Griffith repeatedly told William Aaron that plaintiff Berk was in competition with defendants Hunt and Hunt Capital.

84. Defendants have raised their false and malicious libel claims against Berk in order to interfere with prospective business relations of Orion Partners V, LLC, of which Berk is the sole member.

85. Defendants have repeated and republished their libels of plaintiff Berk as stated in the Clare Letter in order to deter other persons from entering into business relations with Orion Partners V, LLC in connection with future tax credit transactions in which it seeks to participate.

86. Defendants have told various attorneys, accountants and investors that the matters contained in the Berk ABA Forum Website posting were of and concerning Hunt, despite any such statements by Berk in the postings, and they further advised them that Hunt and HCP had acted at all times with full authority even though HCP did not have effective authority to remove the General Partners as of July 1, 2014 and defendants Hunt and Hunt Capital do not have effective consent to remove the General Partners or sue them in federal court in New Orleans.

87. The actions of defendants will cause Orion Partners V, LLC to lose tax credit business in the future as a result of the defendants' malicious and libelous statements of and concerning Berk, the sole member of Orion Partners V, LLC.

WHEREFORE, plaintiff Orion Partners V, LLC demands judgment in its favor for compensatory and punitive damages against all defendants in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000) exclusive of interest and costs but plus interest and costs and other appropriate relief.

  /s/ Harold R. Berk  hrb4977_____
Harold R. Berk    PA 22566
1041 Glendevon Drive
Ambler, PA 19002
215-646-3434
215-896-2882  mobile
haroldberk@gmail.com

Attorney for Plaintiffs

**CERTIFICATE OF SERVICE**


      I Harold R. Berk, Esquire hereby state that a copy of the forgoing Amended Civil

Complaint was served by email and first class mail on the following counsel for defendants

this 10th day of February, 2015:


 David H. Pittinsky, Esquire
 Raymond H. Quaglia, Esquire
 Terence M. Grugan, Esquire
 Ballard Spahr LLP
 1735 Market Street, 51st floor
 Philadelphia, PA 19103-7599


                                   _/s/ Harold R. Berk  hrb4977_____
                                     Harold R. Berk
                                     Attorney for Plaintiffs